158

(No. 64929—Decided January 11, 1967.)

Ravenna Municipal Court.

*Mr. Perry G. Dickenson,* for plaintiff.
*Mr. James E. Poland,* for defendant.

CAMPBELL, J. This case came before this court on the affidavit of the Ohio State Patrol charging the defendant with excessive speed as determined by a radar speed check. The defendant entered a plea of not guilty resulting in a trial to the court.

The affidavit charged that the defendant was operating his 1967 Chevrolet automobile on State Route No. 43 on November 4, 1966, at a speed of sixty (60) miles per hour in a forty-five (45) mile an hour speed zone in violation of Section 4511.21, Revised Code.

The evidence established the facts that on the above date, sometime prior to 9:43 p. m. the Patrolmen had set up a radar

check point as follows. A standard (24″ x 30″) speed meter ahead sign was attached to the State Route No. 43 sign and bolted to the post just below the sign. This sign was located on the right berm for northbound traffic just a few feet north of the entrance of the exit ramp of Interstate 80S to Route 43. The radar car was located along the berm side in front of a boat store 1,125 feet to the north of the "Speed Meter Ahead" sign. North of the meter sign and Route 43 marker was a road narrows sign and beyond that, and to the south of the radar car, was a 45 mile per hour sign. The interceptor car was stationed about one-fourth of a mile north of the radar car.

The defendant entered State Route No. 43 from the exit ramp of Interstate 80S at 9:43 p. m. on November 4, turned and proceeded north on State Route 43 through the radar check area. The radar checked defendant's speed at 60 miles in a 45 mile an hour zone in the night season. He was stopped by the interceptor and given a citation.

The defendant did not testify, so the above facts, as given by the state, are not contested. However, the defense offered evidence as follows. Robert K. Jones, assistant traffic engineer for State Highway Department, Division 4, testified as follows as to the traffic signs here involved:

"Q. Mr. Jones, in your capacity as traffic engineer, Division 4, and in your former capacity as Sergeant of the State Patrol, did you become acquainted with the Traffic Control Manual of the State of Ohio? A. Yes, sir.

"Q. I wonder if you would look at this Manual which I now hand you, and tell me whether or not that is the latest edition of the Traffic Control Manual published by the Department of Highways, State of Ohio? A. Yes, sir, it is, the 1963 Edition is the last one published.

"Q. Mr. Jones, a speed meter ahead sign erected when radar is used to detect speed, that sign must conform with the rules and regulations and specifications as set forth in this Manual, is that correct? A. Yes, sir."

The next witness, Paul Stefansic, of Ravenna, was offered as an expert witness on paint and paint material. In the interest of clarity of his testimony, it is verbatim, as follows:

"Q. Mr. Stefansic, would you please state your full name for the record? A. Paul R. Stefansic.

"Q. Where do you live, Paul? A. 252 North Avenue, Ravenna.

"Q. You appear here today in response to a subpoena which was issued, is that correct? A. Right.

"Q. Mr. Stefansic, what is your present occupation? A. Manager of Sherwin Williams Paint Store.

"Q. Here in Ravenna? A. Ravenna.

"Q. How long have you been manager of the Sherwin Williams Paint Store. A. Ten years.

"Q. Were you associated in the paint industry prior to that? A. No, I haven't.

"Q. During that period of ten years, have you had occasion to come across various paints and various painting materials? A. Yes.

"Q. Have you gone to the manufacturers and participated in seminars and lectures and illustrations being put on by the manufacturers? A. Lots of them.

"Q. At my request, Mr. Stefansic, did you have occasion to examine a certain speed limit sign on Route 43, north of Interstate 80S? A. A speed limit sign?

"Q. Speed limit sign, yes. A. Yes.

"Q. Specifically a forty-five (45) mile per hour speed limit sign? A. Sure it was.

"Q. Did you examine that sign? A. I did.

"Q. Would you tell me, describe the sign to me, please? A. Just a metal sign with, I'd say, graphic arts enamel paint on it.

"Q. It's black and white? A. Yes.

"Q. And does it have a white background and black numbers on the white background? A. Right.

"Q. And the numerals are forty-five (45) miles an hour? A. I'm pretty sure that it is.

"Q. Was the sign that I asked you to look at, was it illuminated with a light of any sort? A. To my knowledge, no.

"Q. Did you observe the paint on the sign? A. Yes.

"Q. Was the sign a reflective type of sign? A. To my knowledge, no.

"Q. Just a plain enamel paint? A. Graphic arts enamel, not a regular enamel, it is a better grade of enamel.

"Q. Is that type of enamel a reflective type of enamel? A. Could be. To make it reflect, the beads have to be added to it.

"Q. I ask you, Mr. Stefansic, to look at State's Exhibit "1" which is a sign, speed meter ahead, in black letters on a white background, is that correct? A. Yes.

"Q. Would you tell me what kind of material the sign is made out of, just looking at it? A. It's a metal.

"Q. Metal. Now, would you tell me, would you examine the paint on this metal sign, and tell me what kind of paint that is? A. It's a paint, just enamel paint, put on through speed print, you can tell by the lettering, this is not lettering, it's speed print, press enameled on here.

"Q. Is that reflectorized? A. No.

"Q. In your opinion, it is not? A. In my opinion, it is not.

"Q. This then would not be a reflectorized coating? A. To be a reflector coating, beads would have to be added. To my knowledge, there's none added to that.

"Q. By that, you mean this State's Exhibit "1," the speed meter ahead sign, is not? A. That's right."

Cross Examination

"Q. You did go down and look at that particular sign, did you not? A. On Forty-Three (43)?

"Q. Yes. A. Yes.

"Q. Calling your attention to the drawing on the board, which is not to scale, up meaning north, and this being Inter-State 80, and this is the short road that comes out across Holiday Inn, and traveling toward Kent, we have here, as I say, this is not to scale, this 45 mile zone sign indicated some distance on the east side of State Route 43, traveling north, and it is there? A. Yes.

"Q. And it says forty-five (45) miles an hour? A. It was when I was there."

The sections of the Code controlling this traffic situation are Section 4511.09, Revised Code of Ohio:

"The department of highways shall adopt a manual and specifications for a uniform system of traffic control devices, including signs denoting names of streets and highways, for use upon highways within this state. Such uniform system shall

correlate with, and so far as possible conform to, the system approved by the American Association of State Highway Officials.''

And Section 4511.091, Revised Code of Ohio:

''(A) Whenever the state highway patrol or any law enforcement officer uses radar for the determination of the speed of a motor vehicle, or uses any mechanical or electrical timing device for the determination of the speed of a motor vehicle over a measured distance of the highway, a rectangular sign apprising drivers of motor vehicles of the presence of such radar or mechanical or electrical timing device shall be posted on or as near as is practicable to the highway and not less than seven hundred fifty feet nor more than fifteen hundred feet in advance of such radar transmitter or any component part of such mechanical or electrical timing device.

''(B) The department of highways shall adopt a uniform sign for the purposes of this section, which sign shall be so designed as to be legible to the operators of approaching vehicles. The department shall include the specifications of the sign so designed in the manual provided by Section 4511.09, Revised Code.

''Any officer arresting or participating, or assisting in the arrest of, a person charged with violating any of the speed provisions of the motor vehicle or traffic laws of this state or the provisions of any ordinance of a municipality regulating speed of motor vehicles is incompetent to testify as a witness in any prosecution of such arrested person if such testimony is based upon or is derived from readings obtained from a radar device or a mechanical or electrical timing device which is obtained contrary to this section.

''(C) The driver of any motor vehicle which has been checked by radar, or by any electrical or mechanical timing device to determine the speed of the motor vehicle over a measured distance of the highway and found to be in violation of any of the provisions of Section 4511.21, Revised Code, may be arrested until a warrant can be obtained, provided such officer has observed the recording of the speed of such motor vehicle by the radio microwaves, electrical or mechanical timing device, or has received a radio message from the officer who observed the speed of the motor vehicle recorded by the radio microwaves,

electrical or mechanical timing device; provided, in case of an arrest based on such a message, such radio message has been dispatched immediately after the speed of the motor vehicle was recorded and the arresting officer is furnished a description of the motor vehicle for proper identification and the recorded speed.''

Turning to the Uniform Traffic Control Devices Manual, we find the following requirement set forth on page 8 in paragraph, Illuminated and Reflectorized signs:

''All signs that are to convey their messages during hours of darkness, other than urban parking signs and pedestrian control signs, shall be reflectorized or illuminated. Much traffic moves after dark, and reflectorization or illumination may be necessary even on signs concerned primarily with daytime activities.''

From the facts presented in the evidence, the court finds that the highway markers and control signs were not illuminated; that the ''Speed Meter Ahead'' sign definitely was not illuminated or reflectorized; and there is no definite proof in the evidence that the forty-five (45) mile per hour speed control sign was reflectorized.

The court, therefore, finds that this charge should be dismissed for failure to comply with the legal requirements of illumination or reflectorizing of the control signs, and it is so ordered.

*Charge dismissed.*